The State of ARIZONA, DEPARTMENT OF LAW, CIVIL RIGHTS DIVISION, and Angela Aguilar, Plaintiffs,

v.

ASARCO, L.L.C., a Delaware limited liability company, Defendant.

No. CV 08–441 TUC–MWB.

United States District Court, D. Arizona.

March 22, 2011.

Ann Ruth Hobart, Office of the Attorney General, Phoenix, AZ, Jenne Sandy Forbes, Amanda V. Damianakos, Waterfall Economidis Caldwell Hanshaw & Villamana PC, Marc David Bleaman, Bleaman Law Firm PC, Tucson, AZ, for Plaintiffs.

Eric Bowen Johnson, David T. Barton, Quarles & Brady LLP, Phoenix, AZ, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PENDING MOTIONS IN LIMINE

MARK W. BENNETT, District Judge.

*FILED UNDER SEAL* (cc: All counsel of record) (Unsealed 02/13/12) *

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................961
 A. *Factual Background* ......................................961
 B. *Procedural Background* ...................................961

II. *LEGAL ANALYSIS* ..............................................962
 A. *Probative Value Vs. Prejudice* ..........................962
 B. *Plaintiff Aguilar's Motions* ............................963
 1. *The motion to exclude the defendant's psychiatric expert* ..............963
 a. *The evidence at issue and the motion to exclude it* ...............963
 b. *Arguments of the parties* ......................964
 c. *Analysis* ......................................965
 2. *The motion to exclude evidence of prior employment* ...................966
 a. *The evidence at issue* .........................967
 b. *Arguments of the parties* ......................967
 c. *Analysis* ......................................967
 C. *The Defendant's Motions In Limine* ......................969
 1. *The motion to exclude evidence of harassment of the alleged*
 *harasser* ...........................................969
 a. *The evidence at issue* .........................969

* This ruling was unsealed by Order dated February 13, 2012, granting the parties' February 13, 2012, Joint Motion To Unseal Memorandum Opinion And Order Regarding Pending Motions In Limine.

 b. *Arguments of the parties* ........................................969
 c. *Analysis* ........................................970
 2. **The motion to exclude evidence of harassment by another**
 **employee** ........................................971
 a. *The evidence at issue* ........................................971
 b. *Arguments of the parties* ........................................972
 c. *Analysis* ........................................973
 3. **The motion to exclude evidence of photographs of graffiti** ..............977
 a. *The evidence in question* ........................................977
 b. *Arguments of the parties* ........................................977
 c. *Analysis* ........................................978
 4. **The motion to exclude they agency's "reasonable cause"**
 **determination** ........................................980
 a. *The evidence at issue* ........................................980
 b. *Arguments of the parties* ........................................980
 c. *Analysis* ........................................981

III. **CONCLUSION** ........................................981

## I. INTRODUCTION

### A. Factual Background

Angela Aguilar, the individual plaintiff in this case, was hired as a laborer by defendant ASARCO, L.L.C., at the North Mill of ASARCO's Mission Mine in December 2005. She alleges that she was subjected to pornographic drawings in a portable restroom at work, including a pornographic drawing that identified her. She contends that when she complained to management about the drawings, ASARCO failed to take any action. She alleges that a supervisor, Julio Esquivel, also sexually harassed her. She contends that, despite her reports to management, Mr. Esquivel's treatment did not change. Instead, she alleges that Mr. Esquivel attempted to set her up for disciplinary reports and gave her warnings. She alleges that she eventually took a leave of absence to try to escape the harassment and retaliation at ASARCO, but when she returned, she was again assigned to work directly with Mr. Esquivel. At that point, she alleges that she felt compelled to quit her employment because of ASARCO's harassment and retaliation.

### B. Procedural Background

In this action, the Civil Rights Division of the Arizona Department of Law (ACRD) and Angela Aguilar allege claims of hostile work environment sexual harassment and retaliation for complaining about sexual harassment in violation of state and federal law.[1] They claim that ASARCO's harassing and retaliatory conduct caused Aguilar's constructive discharge. They seek compensatory and punitive damages from ASARCO. ASARCO denies the plaintiffs' claims and contends that Aguilar was properly warned for poor performance and failing to work as directed. It denies that it treated Aguilar less favorably than male employees. ASARCO also contends that Aguilar's leave of absence and resignation were prompted by Aguilar's desire to return to Colorado to address custody issues relating to her children. ASARCO also contends that Aguilar was not subjected to any circumstances so severe that

---

1. The plaintiffs filed separate actions and plaintiff Aguilar intervened in ACRD's action, all before this case was removed to this federal court. ACRD also asserts a claim of disparate treatment sex discrimination in violation of state law, but that claim will be tried to the court. Aguilar initially also asserted a claim of intentional infliction of emotional distress, but she voluntarily dismissed that claim.

they constituted sexual harassment or justified Aguilar quitting her job.

A jury trial in this matter is set to begin before the undersigned, as a visiting judge, on April 4, 2011. In anticipation of that trial, the parties filed on February 18, 2011, the various Motions In Limine (docket nos. 280, 281, 283, 285, 286, and 287) that are now before the court. Responses were duly filed on March 4, 2011. The court heard telephonic oral arguments on the motions on March 16, 2011. At the oral arguments, plaintiff ACRD was represented by Ann Hobart, Litigation Section Chief Counsel, Civil Rights Division, Office of the Attorney General, in Phoenix, Arizona. Plaintiff Angela Aguilar was represented by Sandy Forbes of Waterfall, Economidis, Caldwell, Hanshaw and Villamana P. C., in Tucson, Arizona. Defendant AS-ARCO, L.L.C., was represented by Eric B. Johnson of Quarles & Brady L.L.P., in Phoenix, Arizona. The briefing and the oral arguments were spirited and illuminating on a number of complicated issues.

The Motions In Limine are now fully submitted, and the court will consider each of them in turn.

## II. LEGAL ANALYSIS

### A. Probative Value Vs. Prejudice

Many of the parties' Motions In Limine are premised in whole or in part on their contentions that the evidence in question is more prejudicial than probative. Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED.R.EVID. 403. The Advisory Committee Notes to Rule 403 explain that "undue prejudice" means "an undue tendency to suggest decision on an improper basis," and that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED.R.EVID. 403, Advisory Committee Notes.

Some so-called "bad acts" evidence is also at issue in the motions in limine. Rule 404(b) of the Federal Rules of Evidence prohibits admission of "bad acts" evidence simply "to prove the character of a person in order to show action in conformity therewith," but does permit such evidence to be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). The Ninth Circuit Court of Appeals has recognized that evidence otherwise admissible pursuant to Rule 404(b) is still subject to the balancing of probative value against prejudicial effect otherwise required by Rule 403. *See, e.g., United States v. Cherer,* 513 F.3d 1150, 1157 (9th Cir.2008) ("If evidence satisfies Rule 404(b), 'the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.'" (quoting *United States v. Romero,* 282 F.3d 683, 688 (9th Cir.2002))); *United States v. Holler,* 411 F.3d 1061, 1067 (9th Cir.2005); *United States v. Curtin,* 489 F.3d 935, 943 (9th Cir.2007) (*en banc* ).

### B. Plaintiff Aguilar's Motions

Plaintiff Aguilar filed two motions in limine. The first pertains to the testimony and the report of ASARCO's psychiatric expert, and the second pertains to evidence of Aguilar's prior employment. These motions are both contested.

### 1. The motion to exclude the defendant's psychiatric expert

#### a. The evidence at issue and the motion to exclude it

On October 20, 2009, the court entered an Order (docket no. 129) authorizing a mental examination of Aguilar pursuant to Rule 35 of the Federal Rules of Civil Procedure, but specifically instructed that "[t]he scope [of the examination] should be limited to any history of depression and/or extreme stress." Order (docket no. 129) at 3.[2] Pursuant to that Order, defense counsel instructed its expert, Dr. Pitt, "to perform a thorough forensic psychiatric evaluation of Ms. Aguilar relative to her claims that she has suffered severe emotional distress and that such distress effected [sic] her ability to remember key events that happened at ASARCO." Plaintiff Aguilar's

Motion (docket no. 280), Exhibit 1 at PITT00043. ASARCO's counsel then listed eight points that Dr. Pitt was to address.[3]

Aguilar has now filed a Motion In Limine To Exclude Defendant's Expert Witness, Steven E. Pitt, D.O. (docket no. 280). In this motion, Aguilar asks the court to do one or more of the following: (a) exclude Dr. Pitt's expert testimony in its entirety because his psychiatric examination exceeded the scope of the examination authorized by the court's October 20, 2009, Order (docket no. 129) granting ASARCO's Motion for Order Permitting Rule 35 Mental Examination; or (b) exclude certain portions of the examination results because the opinions fall outside the scope of the authorized examination; or (c) exclude certain portions of the examination results because the opinions expressed are not the proper subject of expert testimony, under Rule 703 of the Federal Rules of Evidence, or should be excluded under Rule 403, as more prejudicial than probative. ASARCO resists this motion in its entirety.

2. This Order was entered by United States District Court Judge David C. Bury of the District of Arizona, to whom this case was previously assigned.

3. The eight questions posed by counsel are the following:
 1. Does Ms. Aguilar have any preexisting emotional conditions or behaviors that may contribute to her claimed emotional distress?
 2. Has Ms. Aguilar been emotionally damaged by the events she alleges occurred during her employment at ASARCO and if so how?
 3. Does Ms. Aguilar suffer from any specific psychiatric conditions proximately related to the events alleged in her lawsuit?
 4. To what extent has Ms. Aguilar's mental condition effected [sic] her ability to remember important events while she worked at ASARCO?

 5. Litigation is often stressful to the parties involved. Does the stress of this litigation play any role in Ms. Aguilar's emotional state?
 6. Are there any psycho-social stressors in Ms. Aguilar's life, outside of her employment with ASARCO that could account for her emotional state from December 2005 to November 2006?
 7. What is Ms. Aguilar's prognosis for recovering from her claimed emotional state, and are there any treatments she should seek?
 8. Do you find any evidence of malingering or symptom magnification? Is there anything about Ms. Aguilar's mental state from November 2006 through the present that precluded her from obtaining steady employment?
 Plaintiff's Motion (docket no. 280), Exhibit 1 at PITT00043.

### b. Arguments of the parties

Aquilar points out that, even though the court granted the motion for a Rule 35 examination, it specifically noted in its Order that whether the results of the examination would ultimately be admitted at trial was subject to later determination. She contends that the results of the examination should be excluded, in whole or in part, because defense counsel's description of the examination that Dr. Pitt was to perform exceeded the scope of the examination authorized by the Order. She contends that the court's power under Rule 37[4] or its inherent power to sanction a party for a discovery abuse should include the power to exclude evidence for failure to abide by the scope of a discovery order. In the alternative, Aguilar contends that ASARCO should be permitted to present only the evidence from Dr. Pitt that falls within the scope of the authorized examination. That evidence, she contends, consists only of Dr. Pitt's opinions that, except for two isolated periods around 2000–01 and 2003 when she suffered some depression, her history was "noteworthy for the absence of suffering from a chronic mood disorder," and that, although she had previously experienced these two isolated episodes of depression, the earlier events did not contribute to her claimed emotional distress in this case.

In the alternative, Aquilar contends that certain portions of Dr. Pitt's report should be excluded pursuant to Rule 702 of the Federal Rules of Evidence, as beyond the scope of expert testimony or unhelpful to the jury, or pursuant to Rule 403, as more prejudicial than probative. Aguilar contends that, in response to the first question posed by counsel, Dr. Pitt improperly investigated and opined that she "tends to engage in passive-aggressive behaviors,"

and that her "preexisting personality construct has contributed to her claimed emotional distress." She argues that Dr. Pitt admitted in deposition that there is no such condition as passive-aggressive personality disorder in the DSM–IV–TR. She also argues that this opinion is a "back door" attempt to get in evidence of her job performance before she worked for ASARCO and that it amounts to nothing more than improper character evidence. Aguilar also argues that the gist of Dr. Pitt's opinions in response to the second, sixth, and eighth questions posed to him is that, while her distress could be causally related to events at ASARCO, it is also attributable to other stressors in her life, namely, financial and custody issues, but that determination is for the jury, not this expert, to make. Finally, she contends that Dr. Pitt's opinions about litigation-related stress, in response to the fifth question, are not helpful to the jury, because she cannot recover for litigation-related stress, and average jurors will know that litigation is stressful.

ASARCO asserts that the court's Order broadly defined the scope of the examination as Aguilar's "history of depression and/or extreme stress," and that is precisely what Dr. Pitt's examination covered. ASARCO contends that Dr. Pitt questioned Aguilar about the alleged extreme stress and depression that she claims to have suffered as a result of any action or inaction by ASARCO, and he also explored Aguilar's past depression and/or extreme stress attributable to other stressors, such as postpartum depression, a vitriolic divorce, and a contentious custody dispute with her ex-husband. ASARCO also argues that nowhere in the Order is Dr. Pitt precluded from developing any opinions related to Aguilar's history of depression

---

**4.** Aguilar misidentifies the pertinent rule at times as Rule 35(b)(2)(A)(ii), but Rule 35 has no such subdivision, while Rule 37 does have a subdivision (b)(2)(A)(ii), which is relevant to the issue of sanctions for failure to obey a discovery order presented here.

and/or severe stress. ASARCO also argues that Dr. Pitt's evidence, in its entirety, satisfies Rule 702's requirements and does not offend Rule 403. Specifically, ASARCO argues that Dr. Pitt's evidence properly addresses Aguilar's expert's failure to account for the significant emotional distress suffered by Aguilar from things completely unrelated to her employment at ASARCO, such as financial problems, child custody and divorce issues, and an allegation made by Aguilar that her ex-husband may have engaged in some sort of sexual misconduct with her daughter. ASARCO argues that these issues are not things that a lay person would comprehend without expert testimony and explanation. ASARCO argues that there is little likelihood that such evidence will prove more prejudicial than probative or that the jurors will simply substitute Dr. Pitt's opinion for their own, because Aguilar has her own mental health expert to address perceived flaws in Dr. Pitt's opinions.

### c. Analysis

■ The court is confident that it has the authority under Rule 37(b)(2) or its inherent authority to sanction a party for exceeding the scope of a discovery order, just as it has the authority to sanction a party that fails or refuses to obey an order to provide or permit discovery. *See* FED. R.EVID. 37(b)(2). The closer question here is whether ASARCO engaged Dr. Pitt to conduct a mental health examination that exceeded the scope of the court's Order authorizing such a mental health examination, such that any sanctions are appropriate.

On that question, the court finds that a request to Dr. Pitt "to perform a thorough forensic psychiatric evaluation of Ms. Aguilar" would not comport with the court's authorization, which stated that "[t]he scope [of the examination] should be limited to any history of depression and/or extreme stress." Order (docket no. 129) at

3. However, ASARCO actually asked Dr. Pitt "to perform a thorough forensic psychiatric evaluation of Ms. Aguilar *relative to her claims that she has suffered severe emotional distress and that such distress effected [sic] her ability to remember key events that happened at ASARCO.*" Plaintiff Aguilar's Motion (docket no. 280), Exhibit 1 at PITT00043 (emphasis added). This instruction does not, in the court's view, exceed the scope of the court's authorization for a mental examination, as it relates the examination specifically to the plaintiff's claims and the severe emotional distress that was purportedly caused to her by the conduct at issue in those claims. Thus, no sanction, in the form of exclusion of evidence or any other form, is appropriate, where the requested examination did not exceed the scope of the court's Order authorizing the mental health examination.

■ The court finds that Dr. Pitt's report is nevertheless inadmissible, because it is hearsay—indeed, "classic" hearsay—because it represents Dr. Pitt's out of court declaration offered for its truth. *See* FED.R.EVID. 801(c) (defining hearsay); FED.R.EVID. 802 (excluding hearsay). Moreover, Dr. Pitt's report falls within no hearsay exception for reports or records, because it was plainly prepared in anticipation of litigation by a non-treating mental health expert. FED. R.EVID. 803 (defining hearsay exceptions, including in subsection (6) business reports not made in anticipation of litigation). His report is not a hearsay report of a non-testifying expert relied on by a testifying expert that may be admitted pursuant to Rule 703 to show what a testifying expert relied upon in reaching his or her conclusions, *see Turner v. Burlington N. Santa Fe R. Co.,* 338 F.3d 1058, 1061 (9th Cir.2003), because Dr. Pitt did not rely upon his report in reaching his conclusions, the report *represents* his conclusions. Moreover, his report is not an admissible summary of his opinions, be-

cause it does not represent a summary of "voluminous" other evidence within the meaning of Rule 1006. Aguilar's motion will be granted to the extent that Dr. Pitt's report will be excluded.

■ The court's conclusion is different as to testimony from Dr. Pitt about his conclusions. First, with one reservation, the court concludes that none of the opinions of Dr. Pitt that Aguilar challenges fall outside the scope of Rule 702 or Rule 703. Certainly, it *is* the province of an expert to opine on whether the other party's expert's opinions on the causes of depression or stress are accurate, as the matter at issue lies well outside the scope of lay experience, and expert opinions on the matter are likely to be helpful to jurors, even if causation of distress and depression is ultimately for the jurors to decide. *See* FED.R.EVID. 702 (province of expert testimony); FED.R.EVID. 703 (bases of opinions). Moreover, Aguilar has designated her own mental health expert to address these issues, so that she has adequate opportunity to attempt to impeach Dr. Pitt's testimony. The one area of reservation is Dr. Pitt's conclusion that "Mrs. Aguilar's pre-existing personality construct has contributed to her claimed emotional distress." Plaintiff Aguilar's Motion (docket no. 280), Exhibit 1 at PITT00039. ASARCO must demonstrate at a hearing during the course of trial, but outside the presence of the jury, that Dr. Pitt is qualified to offer such an opinion and that this opinion otherwise satisfies the requirements of Rule 702 to be admissible. *See, e.g., Primiano v. Cook,* 598 F.3d 558, 563–65 (9th Cir.2010) (explaining the analysis of the admissibility of expert evidence pursuant to Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

■ One other part of Dr. Pitt's potential testimony, the court finds, runs afoul of Rule 403 and/or Rule 404. The court excludes, below, evidence of Aguilar's prior work history. Similarly, ASARCO may not use Dr. Pitt's testimony for the purpose of getting in through the "back door" improper evidence of Aguilar's prior employment history, although it may permissibly use his testimony to demonstrate that Aguilar suffers from depression or stress caused by matters other than her employment with ASARCO. Thus, Dr. Pitt may permissibly testify that Aguilar suffered and continues to suffer emotional distress that was causally related to the termination of her prior employment, but may not testify to the circumstances of the termination of her prior employment, her allegations of discrimination in her prior employment, or the charges of poor performance leveled against her by her prior employer. The excluded testimony would have little or no probative value to determination of the emotional distress, if any, that Aguilar suffered from harassment or retaliation that she allegedly suffered at ASARCO, or her alleged constructive discharge from ASARCO, and would be unfairly prejudicial as "propensity" evidence. *See* FED.R.EVID. 403, Advisory Committee Notes (an "improper basis" is "commonly, though not necessarily, an emotional one"); FED.R.EVID. 404(b) (excluding propensity evidence, but permitting "bad acts" evidence for other purposes, subject to Rule 403 limitations).

Therefore, Aguilar's Motion In Limine To Exclude Defendant's Expert Witness, Steven E. Pitt, D.O. (docket no. 280) will be granted as to Dr. Pitt's report, but, with certain exceptions noted above, denied as to challenges to Dr. Pitt's testimony at trial.

### 2. The motion to exclude evidence of prior employment

Plaintiff Aguilar's second motion in limine is her Motion In Limine To Exclude:

1. Evidence Of Prior Employment Including Job Performance; 2. Arizona DES Determination; And 3. Reference To Dismissed Claim (docket no. 287). In its Response (docket no. 294), ASARCO represents that it does not oppose the motion as to evidence of the DES Determination or reference to Aquilar's dismissed claim, but does contest the exclusion of Aguilar's prior employment records.

### a. The evidence at issue

The contested part of Aguilar's second Motion In Limine pertains to ASARCO's Exhibit 129 in the Joint Proposed Pretrial Order (docket no. 261), which is comprised of a portion of Aguilar's employment records from 2004, when Aguilar was working at Fleet Boston. See Exhibit 1, ASARCO 1992–2000, 2051–2058. The challenged records are from a few months of Aguilar's employment with Fleet Boston, not the entirety of her employment there, which Aguilar contends shows a three-year history of satisfactory performance before any issues arose. The portion of Aguilar's records of employment with Fleet Boston that ASARCO seeks to offer shows that Aguilar began to have performance problems in 2004, in response to which she claimed that she was being discriminated against and treated unfairly, sought treatment from a counselor, and later ended her employment.

### b. Arguments of the parties

Aguilar contends that the excerpted portion of her performance records is designed to portray her as someone who was having performance issues at work and perhaps personality conflicts with co-employees. She contends that such evidence is not relevant to any of her claims in the present case, but is intended simply to allege that she has a "personality trait" and acted "in conformity" with her conduct at Fleet Boston when she had "personality issues" with ASARCO employees, including her alleged harassers. She contends

that such evidence should be excluded pursuant to Rule 404(b). She also contends that the materials in question are hearsay.

ASARCO argues that evidence of Aguilar's prior employment is admissible pursuant to Rule 405(b), because it relates to her character or a character trait that is an essential element of her claim, which is that the environment was both objectively and subjectively abusive. The subjective requirement, ASARCO argues, will necessarily require Aguilar to testify that, because of her character, she perceived conduct by ASARCO employees as hostile toward her sex. ASARCO intends to offer the prior employment records to show that it is not sexual conduct that is offensive to Aguilar's character, but criticism of her work performance, and that she responds to such criticisms by claiming discrimination. ASARCO also argues that evidence of prior employment, like evidence of prior lawsuits at issue in *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998), is admissible pursuant to Rule 404(b) as probative of an employee's vindictive state of mind. Here, ASARCO argues, the evidence of Aguilar's prior claims of discrimination against prior employers goes directly to her state of mind with regard to employers who criticize her work performance.

### c. Analysis

ASARCO's Rule 405 argument for the admissibility of this evidence is certainly novel. It is not, however, persuasive. Requiring proof that an environment is "subjectively" offensive or abusive simply does not make a plaintiff's "character" an essential element of a sexual harassment claim or open the door to evidence of the plaintiff's "character or a trait of character." See FED.R.EVID. 405(b) ("In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made

of specific instances of that person's conduct."). This element has to do with the plaintiff's *perception* of the environment, not her "character."

ASARCO may be on firmer ground when it asserts that evidence of prior employment, and specifically evidence of claims of discrimination in response to performance criticism in prior employment, is admissible pursuant to Rule 404(b) to show the employee's vindictive intent or motive. *Cf. United States v. Blitz,* 151 F.3d 1002, 1007–09 (9th Cir.1998) (evidence of a criminal defendant's prior employment with another telemarketing company was properly admitted at trial pursuant to Rule 404(b) to show the defendant's knowledge of involvement in fraudulent telemarketing). Such evidence might tend to show that a sexual harassment plaintiff was not subjectively offended by the conduct at issue, but instead claimed harassment as a defense to performance criticism; it appears to be sufficiently similar to circumstances at issue in the plaintiff's present claim; it may be sufficient to show that the plaintiff previously made pretextual or vindictive claims of discrimination; and it is not too remote in time to be probative of Aguilar's mental state at the time of the conduct at issue in this lawsuit. *See id.* (citing these requirements for admissibility of evidence pursuant to Rule 404(b)); *see also Gastineau v. Fleet Mortgage Corp.,* 137 F.3d 490, 496 (7th Cir.1998) (applying the same four-factor analysis to purported Rule 404(b) evidence of an employee's history of lawsuits against prior employers, because the evidence was relevant to show a *modus operandi* of creating fraudulent claims, the other lawsuits were sufficiently similar and close enough in time, the prior lawsuits were evidenced by the pleadings, and unfair prejudice did not outweigh the probative value, where the evidence was not merely "propensity" evidence, but showed the employee's vindictive state of mind).

■ The value of such evidence to show the purportedly legitimate Rule 404(b) purpose here, however, is considerably less than that of the prior litigation history evidence at issue in *Gastineau,* which was extensive, thus demonstrating a "pattern." 137 F.3d at 495–96 (the evidence showed that the plaintiff had sued three of his former employers). Here, the evidence of prior employment relates to a single employer for a relatively brief part of the time that Aguilar was employed with that employer, so that the court doubts its sufficiency to demonstrate a "pattern" or *"modus operandi."*

Moreover, even if otherwise admissible pursuant to Rule 404(b), such evidence may still be excluded if its potential for prejudice exceeds its probative value, within the meaning of Rule 403. *See Cherer,* 513 F.3d at 1157 ("If evidence satisfies Rule 404(b), 'the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.'" (quoting *Romero,* 282 F.3d at 688)). Here, where the probative value of the evidence for the Rule 404(b) purpose for which it is purportedly offered is relatively slight, because the court doubts the sufficiency of the evidence to demonstrate a "pattern" or *"modus operandi,"* that limited probative value is substantially outweighed by the potential for prejudice, arising from the possibility that jurors will simply act on the evidence as improper "propensity" evidence and from the potential for a "mini-trial" over Aguilar's prior employment, distracting the jurors from the issues properly before them. *Cf. Tisdale v. Federal Express Corp.,* 415 F.3d 516, 536–37 (6th Cir.2005) (concluding that the district court properly excluded purported Rule 404(b) evidence of an employee's post-termination employment history, offered to show that the employee had properly been disciplined for acceptable conduct issues, because it was more unfairly prejudicial than probative under

Rule 403 and was offered to show a propensity for bad acts, which is impermissible under Rule 404(b)).

Therefore, Aguilar's second Motion In Limine (docket no. 294), will be granted as to the Arizona DES determination and as to references to the dismissed claim of intentional infliction of emotional distress, which ASARCO does not contest, and also granted as to the evidence of Aguilar's prior employment, including job performance, which ASARCO does contest.

### C. The Defendant's Motions In Limine

ASARCO filed four separate Motions In Limine (docket nos. 281, 283, 285, and 286), seeking to exclude a variety of evidence. The plaintiffs resist each of these motions, in whole or in part. The court will consider each of these motions in turn.

### 1. The motion to exclude evidence of harassment of the alleged harasser

#### a. The evidence at issue

The first of ASARCO's motions is its Motion In Limine Regarding Allegations Of Discrimination Or Harassment Against ASARCO By Julio Esquivel (docket no. 281). The evidence in question relates to a charge of discrimination filed by Julio Esquivel, one of Aguilar's alleged harassers, against ASARCO alleging that he was subjected to sex or religious discrimination while employed by ASARCO and/or any of the information obtained by the ACRD in investigating Esquivel's charge. Esquivel brought his charge of discrimination on August 13, 2007, nine months after Aguilar's employment with ASARCO ended. In his charge, Esquivel alleged that he had been subjected to pornographic writings in restrooms at ASARCO. He also alleged that after he complained about the writings, nothing was done, and he received an unfair reprimand, poor performance evaluations, and was demoted. Esquivel claimed that he had been discriminated against because of his sex (male) and his Christian beliefs.

#### b. Arguments of the parties

ASARCO argues that, even if there was evidence to support Esquivel's charge of discrimination, that charge is completely irrelevant to Aguilar's claims. ASARCO points out that Esquivel is male, but Aguilar is female; Aguilar never saw or knew about the graffiti purportedly relating to Esquivel; that graffiti did not involve Aguilar; and such "me too" evidence is so dissimilar to Aguilar's claims as to provide no support for her claims. ASARCO also argues that such evidence will confuse the jurors, focus their attention on events that have nothing to do with Aguilar, and waste time while the parties attempt to prove or disprove a myriad of issues relating to that evidence.

The plaintiffs counter that Esquivel and Aguilar were complaining, at least in part, about discriminatory or harassing treatment by the same person, Greg Schwartzberg, the general mill supervisor at the North Mill, and harassment in the same way, pornographic graffiti in bathrooms. They also argue that courts have recognized that the mere presence of pornography in the workplace can alter the status of women and is relevant to an assessment of whether or not their environment was objectively hostile. They also contend that this evidence is relevant to the first prong of an *Ellerth/Faragher* affirmative defense, because it shows that ASARCO failed to take reasonable care to prevent and correct harassment.[5]

---

**5.** The plaintiffs also argue that this motion is an attempt to resurrect rejected arguments for sanctions for supposed ethical violations by the ACRD investigator who investigated Esquivel's claims. However, the court has resolved the issue on the basis of *evidentiary* standards, and does not find that this argument that ASARCO is improperly trying to resurrect rejected arguments changes the court's disposition.

### c. Analysis

In *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684 (9th Cir.2001), on which ASARCO relies, the court considered the admissibility of evidence of alleged harassment of others five years *before* the alleged harassment of the plaintiffs. 244 F.3d at 689. The court first noted that the evidence would have little probative value as "background evidence" for the plaintiffs' hostile environment claims, because the prior instances did not involve the plaintiffs and occurred outside of the statute of limitations period. *Id.* Assuming that the evidence was probative of the employer's failure to take adequate remedial measures prior to the plaintiffs' complaints, because it involved the same alleged harasser and gave the employer at least constructive notice of misconduct, the court held that it was nevertheless not an abuse of discretion to exclude it, because it might have resulted in a "mini trial," where the evidence was disputed. *Id.* at 689–90. Specifically, the court concluded that "the trial court could reasonably conclude that admitting [this evidence], along with Defendants' rebuttal evidence, would create a significant danger that the jury would base its assessment of liability on remote events involving other employees, instead of recent events concerning Plaintiffs," such that its risk of prejudice outweighed its probative value. *Id.* at 690.

■ The circumstances are a little bit different here, in that Esquivel's alleged harassment occurred much closer in time to Aguilar's alleged harassment, just nine months later, and involved a similar kind of harassment, pornographic graffiti. However, it was in fact *after* Aguilar's alleged harassment; it involved harassment of a male employee, not a female employee; there is no showing that Aguilar was aware of or saw the graffiti directed at Esquivel, such that it could have

made her environment either objectively or subjectively harassing; and it would invite a "mini trial" concerning Esquivel's claims, where that evidence is disputed. Under these circumstances, there is not only the possibility that the jurors would base a decision on evidence of harassment of Esquivel that has little to do with Aguilar's harassment, but that such evidence will waste time and resources of the parties, the court, and the jurors. *Cf. id.* The court also notes that, although ASARCO mentioned a possible *Ellerth/Faragher* defense in Rule 26 disclosures, ASARCO has not asserted such a defense in proposed Jury Instructions or other pretrial filings. Thus, this evidence is not relevant to any defense actually asserted by ASARCO.

On the other hand, circumscribed evidence of another incident of pornographic graffiti in a restroom after Aguilar's complaints and administrative charge is relevant to both ASARCO's reckless indifference to Aguilar's federally protected rights, that is, the perceived risk that its actions would violate federal law, *see Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571, 621–22 (9th Cir.2010) (citing 42 U.S.C. § 1981a(b)(1) for this standard in a Title VII case), and the "reprehensibility" of ASARCO's conduct, for purposes of determining what, if any, punitive damages should be awarded against ASARCO for similar conduct toward Aguilar, because it demonstrates a failure to remedy known harassing conduct. *Cf. Bains, L.L.C. v. Arco Prods. Co., Div. of Atlantic Richfield Co.*, 405 F.3d 764, 775 (9th Cir.2005) (a clear failure to remedy or even address the discriminatory effects of the defendant's employee's conduct could properly have led a jury to conclude that punitive damages were necessary to prevent such discrimination from occurring in the future, but " '[r]eprehensibility should be discounted if defendants act promptly and compre-

hensively to ameliorate any harm they cause in order to encourage such socially beneficial behavior'" (quoting *In re Exxon Valdez*, 270 F.3d 1215, 1242–43 (9th Cir. 2001))). Such circumscribed evidence would consist of testimony that Esquivel also saw and complained to management about pornographic graffiti in a restroom several months after Aguilar's complaints, her departure from her employment, and her administrative charge. ASARCO would, in turn, be allowed to impeach that testimony, for example, by presenting evidence that such pornographic graffiti did not exist. The limits on such evidence and a limiting instruction given at the time that such evidence is introduced about the proper purposes for which such evidence may be considered would ameliorate the potential prejudice that any such evidence might have. *See, e.g., Cherer*, 513 F.3d at 1159 (where the court reduces the risk of unfair prejudice by giving a limiting instruction, the risk of prejudice is less likely to substantially outweigh the probative value of the evidence); *United States v. Hollis*, 490 F.3d 1149, 1153 (9th Cir.2007).

Therefore, ASARCO's Motion In Limine Regarding Allegations Of Discrimination Or Harassment Against ASARCO By Julio Esquivel (docket no. 281) will be denied as to circumscribed evidence that Esquivel also saw and complained to management about pornographic graffiti in a restroom, but will otherwise be granted as to the full range of evidence related to Esquivel's complaints of discrimination.

### 2. The motion to exclude evidence of harassment by another employee

ASARCO's next motion is its Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (docket no. 283). In this motion, ASARCO seeks to prevent the plaintiffs from introducing any evidence and/or making any argument or comment at trial concerning Angela Aguilar's allegations of harassment and/or discrimination by Wayne Johnson.

#### a. The evidence at issue

ASARCO provides scant identification of the allegations of harassment of Aguilar by Wayne Johnson at issue in this motion. ASARCO explains that, for the first time in response to its motion for summary judgment, Aguilar claimed that, shortly after she began her employment with AS-ARCO, she received unwanted sexual advances from a co-worker named Wayne Johnson and that she feared that Johnson would "rape" her. The plaintiffs provide little explanation of the evidence they seek to admit concerning Johnson in their resistance to ASARCO's motion in limine. They do assert in their resistance that pornographic graffiti labeled with Aguilar's name appeared again and again in the filter plant portable toilet, which implicated Johnson, with whom Aguilar worked alone at the filter plant when the pornography began to appear. It appears, from Aguilar's response to ASARCO's motions for partial summary judgment, that the allegations at issue are also that, when Aguilar was a car loader, Wayne Johnson was the filterman on her shift; that Johnson had responsibility for training Aguilar on how to operate the track mobile that the car loader uses to move rail cars to be loaded with copper concentrate in and out of the filter plant; that as soon as Aguilar and Johnson began working together, Johnson began to proposition Aguilar for sex; that when Aguilar told Johnson that she was married, was not interested in having an affair with him, and did not appreciate being asked, Johnson tried to persuade Aguilar by telling her that they could have sex in the filter plant shack or on the deck in one of the haul trucks and that no one would ever have to know; that Johnson would sometimes say these things standing close behind Aguilar, speaking

into her ear; that when Aguilar explained to Johnson that she could not have sex with him because she did not want to jeopardize her marriage, Johnson asked Aguilar, "What if I forced you?" and "What if I held you down?"; and that, at one point, Johnson blocked Aguilar's exit from the filter plant shack in a threatening manner, leading her to begin to fear that Johnson would rape her. Plaintiffs' Corrected Joint Response In Opposition To Defendant's Motions For Partial Summary Judgment 1 & 2 (docket no. 204) at 4–5.

### b. Arguments of the parties

ASARCO argues that Aguilar failed to exhaust her administrative remedies as to any claims pertaining to alleged harassment by Johnson—indeed, ASARCO contends that Aguilar never gave notice of alleged harassment by Johnson in her administrative charge, in her complaint in this action, in responses to discovery requests in this case, or in her deposition. Instead, ASARCO contends that Aguilar first asserted these allegations in response to one of ASARCO's motions for partial summary judgment.

More specifically, ASARCO acknowledges that the scope of properly exhausted claims extends to those that are "like or reasonably related" to specifically identified claims in the administrative charge, but argues that the claims against Johnson do not meet this test. ASARCO points out that the Johnson incidents involve a different perpetrator, occurred at different times in a different location of ASARCO's Mission Mine, and set forth an entirely different harassment theory. Thus, ASARCO contends that Aguilar is engaging in litigation by ambush.

ASARCO also argues that Aguilar never properly pleaded or disclosed the claims against Johnson in this lawsuit and that Aguilar did not mention them until after discovery closed. ASARCO argues that it should not be punished for Aguilar's failure to disclose factual allegations that should have been made in the plaintiffs' Complaints, disclosure statements, discovery responses, and Aguilar's deposition. ASARCO argues that, at a minimum, such allegations should have been made prior to the close of discovery. ASARCO contends that, by waiting until after discovery had concluded to make what it characterizes as "bombshell" allegations, Aguilar has put ASARCO in the unfair position of having to defend itself at trial against allegations that it was precluded from exploring in discovery, despite ASARCO's repeated requests, because the plaintiffs refused to disclose these allegations as a basis for their claims of discrimination and harassment.

The plaintiffs respond that the court already rejected arguments similar to those ASARCO asserts now when it considered the evidence of Johnson's harassment in the course of the litigation of ASARCO's motion for summary judgment. They argue that motions to dismiss should not be disguised as motions in limine; rather, motions in limine should be limited to evidentiary matters. Nevertheless, they contend that Aguilar exhausted her claims relating to Johnson's harassment, even though she did not name Johnson in her administrative charge, because her claims against Johnson are "like or reasonably related to" the other claims in her administrative charge. They argue that ASARCO certainly should have anticipated that Aguilar's sexual harassment allegations to the ACRD relating to the pornographic graffiti labeled with her name that appeared again and again in the filter plant portable toilet would implicate Johnson, with whom Aguilar worked alone at the filter plant when the pornography began to appear, and concerning whom ASARCO knew Aguilar had made repeated complaints of sexual harassment. She also contends that her claims against Johnson

are reasonably related to the allegations concerning pornographic graffiti contained in Aguilar's ACRD charge, and ASARCO knew it, because ASARCO's former in-house counsel discussed the Johnson allegations with two high-level ASARCO managers shortly after the reasonable cause determination on Aguilar's charge was issued, when the ACRD was attempting conciliation between the parties before initiating this lawsuit, and ASARCO has repeatedly resisted producing evidence related to the Johnson claims. Such knowing suppression of the evidence, the plaintiffs contend, makes ASARCO's "litigation by ambush" argument untenable.

The plaintiffs also argue that, in July 2010, months after discovery closed and ASARCO's partial summary judgment motions were denied, ASARCO was compelled to produce records relating to the Johnson allegations that should have been disclosed to the ACRD when the ACRD was investigating Aguilar's discrimination charge in 2007, citing a June 30, 2010, Order (docket no. 257), filed by Judge Bury. Thus, the plaintiffs argue that ASARCO's "failure to exhaust" argument rings particularly hollow, where ASARCO's own conduct prevented the plaintiffs from developing their claims concerning Johnson.

### c. Analysis

The court notes that ASARCO has not asserted an *evidentiary basis, e.g.,* a relevance or prejudice ground, for excluding the plaintiffs' evidence of harassment by Johnson. Rather, ASARCO's challenge to that evidence reads as a renewed challenge to the court's jurisdiction to consider claims based on that evidence. However, it is on both jurisdictional and evidentiary grounds that the court ultimately concludes that evidence of alleged harassment of Aguilar by Johnson must be admitted.

As the Ninth Circuit Court of Appeals has explained,

To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim. *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir.2002); *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994). Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge. *See* 42 U.S.C. § 2000e–5(b); *see also B.K.B.,* 276 F.3d at 1099. "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles County Superintendent of Sch.,* 883 F.2d 1472, 1475–76 (9th Cir.1989) (internal quotation marks omitted); *see also Anderson v. Reno,* 190 F.3d 930, 938 (9th Cir.1999) (stating that "forcing an employee to begin the administrative process anew after additional occurrences of discrimination in order to have them considered by the agency and the courts would erect a needless procedural barrier") (internal quotation marks omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Therefore, we must conclude that the district court erred in denying jurisdiction over [the claims at issue] "if [those claims] fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Farmer Bros.,* 31 F.3d at 899 (internal quotation marks and citation omitted) (emphasis in original).

\* \* \*

We are required to construe appellants' EEOC charges " 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.' " *B.K.B.*, 276 F.3d at 1100 (citing *Kaplan v. Int'l Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975)). We will consider a plaintiff's claims to be reasonably related to allegations in the charge "to the extent that those claims are consistent with the plaintiff's original theory of the case," *B.K.B.*, 276 F.3d at 1100, as reflected in the plaintiff's factual allegations and his assessment as to why the employer's conduct is unlawful.

*Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir.2002) (footnote omitted).

▬ The court has no hesitation concluding that claims of harassment by Johnson, in the form of pornographic graffiti in portable restrooms that implicated Johnson, would have been "reasonably related to" claims of similar harassment found in Aguilar's administrative charges and Complaints in this action and that an investigation of those claims would have been reasonably expected to grow out of Aguilar's administrative charge of harassment. *See id.* The failure to identify Johnson specifically as an alleged harasser is not fatal, because ASARCO should have reasonably anticipated that Johnson would have been identified as an alleged harasser in the Title VII suit, as one of the alleged authors of pornographic graffiti, even though he was not named in the administrative charge. *Sosa v. Hiraoka*, 920 F.2d 1451, 1458–59 (9th Cir.1990). Therefore, evidence supporting these allegations against Johnson falls squarely within the scope of Aguilar's Title VII claims in the administrative charge and this action.

Aguilar's allegations that Johnson propositioned her for sex and that she was afraid that he would "rape" her, however, do involve a considerably different theory

of harassment from the allegations found in Aguilar's administrative charge and Complaints in this action, which are premised on pornographic graffiti in another restroom and allegedly rude and demeaning treatment by Mr. Esquivel. The plaintiffs do not explicitly argue otherwise. Instead, they frame their argument that the Johnson evidence is like or reasonably related to the allegations in Aguilar's administrative complaint in terms of pornographic graffiti in the filter plant portable toilet that would have implicated Johnson. *See* Plaintiffs' Joint Response In Opposition To Defendant's Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (Plaintiffs' Joint Response) (docket no. 299) at 4. On the other hand, the plaintiffs do incorporate, by reference, into their resistance to this motion in limine "the summary of facts relating to the Johnson allegations in Plaintiffs' Corrected Joint Response In Opposition To Defendant's Motion For Partial Summary Judgment 1 & 2 (docket no. 204) at pp. 4–8." Plaintiffs' Joint Response In Opposition To Defendant's Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (docket no. 299) at 4. The incorporated summary of facts does include allegations that Johnson propositioned Aguilar for sex and behaved in what Aguilar considered a threatening manner.

▬ Although the allegations of sexual advances by Johnson are different in kind from the allegations that he authored pornographic graffiti, the court finds that investigation of alleged sexual advances by Johnson would reasonably—indeed, necessarily—have grown out of the ACRD's investigation of Aguilar's harassment claims, had ASARCO not blocked such an investigation. *See Lyons*, 307 F.3d at 1104 (the district court has jurisdiction over claims "within the scope of the

EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination" (quoting *Farmer Bros.*, 31 F.3d at 899, with emphasis in the original)). Investigation of the incident of the pornographic graffiti in the filter plant portable restroom would reasonably have pointed to Johnson as the perpetrator and to investigation of his relationship with Aguilar, which would inevitably have revealed his alleged sexual advances as a possible motive for the pornographic graffiti, had ASARCO not suppressed such records.

Just as importantly, the court finds that ASARCO was well aware of Aguilar's complaints of sexual advances by Johnson at the time of her administrative charge, so that ASARCO cannot credibly claim litigation by ambush. ASARCO admits that it received in the course of the ACRD investigation documents dated December 22, 2006, authored by Aguilar, describing unwanted sexual advances by "Wayne," that is, Wayne Johnson. *See* Defendant's Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (docket no. 283) at 5 & n. 2. ASARCO argues that this brief reference was insufficient to put it on notice of any contention that any alleged incident with Johnson formed the basis for the plaintiffs' claims, but that argument is disingenuous. The record shows that ASARCO resisted production of any documents that would have shed further light on Aguilar's allegations of sexual advances by Johnson, despite evidence that ASARCO's in-house counsel discussed the Johnson allegations with two ASARCO managers shortly after the "reasonable cause" determination on Aguilar's charge was issued. Moreover, had ASARCO responded fully to the ACRD's administrative requests for Aguilar's and Johnson's personnel records, the administrative investigation in 2007 would have included notes in Johnson's personnel file, not produced until ASARCO was ordered by the court to produce them in 2010, showing that Aguilar complained to human resources about Johnson's advances on several occasions in April 2006. *See* Plaintiffs' Joint Response (docket no. 299), Exhibit B (Defendant's Twentieth Supplemental Disclosure Statement, ASARCO2344–45). Furthermore, ASARCO had knowledge of Aguilar's complaints about sexual advances by Johnson at the time that the incidents actually occurred, because Aguilar complained about those advances to Sheila Swech, a human resources supervisor.

In his ruling on ASARCO's motions for summary judgment, Judge Bury noted that Aguilar had brought her allegations of sexual advances by Johnson to the attention of Ms. Swech at the time that they occurred. *See* Order (docket no. 249). However, Judge Bury did not cite these allegations against Johnson among the "myriad issues of fact" that remain to be tried in relation to Aguilar's sexual harassment claim, but in relation to her retaliation claim. *See* Order (docket no. 249) at 9. Specifically, Judge Bury noted that, when Aguilar complained about sexual advances by Johnson to Ms. Swech, a human resources supervisor, Ms. Swech told her that no one would believe her and that she would be fired before Johnson was. *Id.* Judge Bury also noted that Aguilar's complaints about harassment by Johnson, including Aguilar's allegations that Johnson threatened to rape her, were known to Schwartzberg, Esquivel, and Arvizu, caused Johnson to refuse to train her for her job in the filter plant, and caused her to be paired with a poor employee that no one else wanted to work with when she applied for a position to get away from Johnson. *Id.* The allegations about sexual advances by Johnson are not mentioned in Judge Bury's statement of the factual background, *see id.* at 1–3, or in his discus-

sion of the sexual harassment claims. *See id.* at 5–8 (discussing the disparate treatment/sexual harassment claims), 11–14 (discussing the hostile work environment and constructive discharge claims). The undersigned does not know why Judge Bury did not discuss these allegations in relation to Aguilar's sexual harassment claim, as well as in relation to her retaliation claim. Nevertheless, it has been clear to ASARCO that these allegations formed part of the case at least since Judge Bury's summary judgment ruling.

Because the allegations of sexual advances by Johnson are, as ASARCO contends, "bombshell" allegations, in comparison to other allegations of sexual harassment in the case, the court does find it passing strange that neither Aguilar nor the ACRD pressed an administrative investigation of those allegations nor raised them earlier in this litigation (by explicitly pleading them, mentioning them in discovery responses, or mentioning them in deposition testimony). Instead, the plaintiffs only raised those allegations in this litigation in response to ASARCO's summary judgment motions, and supported them only with Aguilar's belated declaration. " 'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.' " *Van Asdale v. International Game Tech.,* 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991)). However, the court cannot find that the belated declaration is a "sham," *see Kennedy,* 952 F.2d at 267 (permitting a district court to discount a declaration in an affidavit that contradicts prior deposition testimony if the court "make[s] a factual determination that the contradiction was actually a 'sham' "); *Van Asdale,* 577 F.3d at 998 (also citing *Kennedy* for the requirement that the court determine whether the affidavit is a

"sham"), because Aguilar's description of the advances in her December 22, 2006, notes and in the April 5, 2006, notes in Johnson's personnel records are essentially consistent with the plaintiffs' present allegations that Johnson made sexual advances to Aguilar.

Nor does the court find that the probative value of evidence of Johnson's sexual advances is exceeded by any potential for prejudice. Aguilar is, of course, subject to impeachment concerning these allegations, based on her representation in her December 22, 2006, notes that she "decided to handle the whole situation my self [sic]" and in the April 5, 2006, notes in Johnson's personnel file indicating that Aguilar described Johnson as "a complete gentleman," but now contends that she was afraid that Johnson would "rape" her, as well as her failure to raise the incident earlier, all of which undermine her contentions as to the truth or seriousness of the incidents. The impeachability of Aguilar's present version of the incidents with Johnson goes to the weight of the evidence, not its admissibility. The court certainly cannot find that exploration of issues related to this evidence would be a waste of time or confuse the jurors, as it is plainly relevant to Aguilar's claims that she was subjected to sexual harassment and retaliation for complaining about that harassment. *See* FED.R.EVID. 403. The "prejudice" that ASARCO expressly asserted was "surprise" or "litigation by ambush," but the court has rejected those contentions.

In short, ASARCO has certainly known about Aguilar's allegations about Johnson's sexual advances and the implication that he is responsible for the pornographic graffiti in the portable restroom near the filter plant for a long time—indeed, since before this litigation was filed. There is also evidence that ASARCO (through a human resources supervisor

and the mill supervisor) knew of allegations that Johnson had propositioned and threatened Aguilar. The allegations of sexual advances, although different in kind from Aguilar's other allegations of sexual harassment involving pornographic graffiti, would nevertheless reasonably have fallen within the scope of the ACRD's investigation of Aguilar's sexual harassment claims, had ASARCO not actively impeded investigation of those claims. Finally, this evidence is not more prejudicial than probative. Under these circumstances, ASARCO's Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (docket no. 283) will be denied.

### 3. The motion to exclude evidence of photographs of graffiti

The next motion now before the court is ASARCO's Motion In Limine Regarding Photographs Allegedly Taken By Sylvia Saenz (docket no. 285). The plaintiffs resist this motion.

#### a. The evidence in question

This evidence concerns photographs allegedly taken by Sylvia Saenz, one of Aguilar's co-workers, of bathroom graffiti. ASARCO represents that Ms. Saenz, who allegedly took the photographs, has testified in deposition that she never saw any printouts of the photographs, but only saw them on her digital camera, and that Aguilar testified that she thinks that Ms. Saenz gave her a disk of photographs that she took to Walgreens to get developed. The plaintiffs assert that the nine photographs at issue were taken by Ms. Saenz about a month after Aguilar told Ms. Saenz about the pornographic graffiti in a portable restroom near the filter plant at the Mission Mine. The plaintiffs also contend that, in her deposition, Ms. Saenz described in some detail the drawings that she saw, noting that they were partially erased or washed out; explained that she took pictures of the pornography with a digital camera at that time; and that when Aguilar visited her home that same week, they looked at the photographs together (according to Ms. Saenz, they viewed the photographs on the camera itself, but according to Aguilar, they viewed them on Ms. Saenz's computer). Although Ms. Saenz admitted that she had not seen any actual printouts of the photographs until her deposition on September 10, 2009, she did identify them as the photographs she took and discussed what was depicted in the photographs. Aguilar asserts that she actually has and intends to use at trial the actual photographs produced from the digital record made by Ms. Saenz, not the poor quality printouts attached to ASARCO's motion.

#### b. Arguments of the parties

ASARCO argues that the plaintiffs lack either an "original" or an equivalent copy of the photographs at issue, as required by Rules 1002 and 1003 of the Federal Rules of Evidence. More specifically, ASARCO argues that the plaintiffs are unable to provide any competent evidence that the photographs to be offered into evidence are originals or that they are printouts of the original negatives. ASARCO also argues that the photographs should be excluded under Rule 901, because they are not what they purport to be. This is so, ASARCO argues, because the photographs do not reveal details, such as Aguilar's initials near a drawing of a woman's spread legs, as Aguilar and Ms. Saenz have suggested. Thus, ASARCO contends that the jurors would simply be left to speculate from poor copies and indecipherable duplicates that the photographs are damning evidence.

The plaintiffs argue that both Aguilar and Ms. Saenz will provide sufficient testimony to demonstrate that the printouts reflect the images recorded by the digital

camera and, indeed, that they plan to use the originals of the digital photographs, not any printouts, as the exhibits at trial. The plaintiffs also argue that ASARCO's concerns about how the photographs were purportedly developed are a misdirection, as the question is whether their witnesses can testify that the versions that they saw in digital form are the same as those offered into evidence, either as printed photographs or digital displays. They reject ASARCO's Rule 901 argument on the ground that authentication of photographs does not depend on their quality, but on whether they accurately and fairly depict the scenes or events at issue. They contend that Ms. Saenz will testify that what she saw in the portable restroom and what is shown in the photographs is a nude female figure, with legs open, and a penis, along with writing containing a portion of Aguilar's name.

### c. Analysis

Rule 1001 of the Federal Rules of Evidence provides as follows:

For purposes of this article the following definitions are applicable:

(1) **Writings and recordings.** "Writings" and "recordings" consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, *photographing*, magnetic impulse, mechanical or electronic recording, or other form of data compilation.

(2) **Photographs.** "Photographs" include still photographs, X-ray films, video tapes, and motion pictures.

(3) **Original.** An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. *An "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight,* *shown to reflect the data accurately, is an "original".*

(4) **Duplicate.** A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.

FED.R.EVID. 1001 (emphasis added). While an "original" is required to prove the content of a photograph, *see* FED.R.EVID. 1002, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." FED.R.EVID. 1003.

Pursuant to Rule 1001, printouts of the photographs in question are "originals" of the photographs, if they are shown to reflect the data accurately. While the printouts of the photographs at issue provided by ASARCO with its motion are such poor quality that the court would be hard-pressed to say whether they reflect the data of the original digital photographs accurately, the same cannot be said of all of the printouts provided by the plaintiffs in support of their response to ASARCO's motion. Moreover, the plaintiffs have stated their intention to offer the originals of the photographs, not the printouts provided by either ASARCO or the plaintiffs in relation to this motion.

ASARCO founds its challenge to the photographs not on Rule 1001, but on Rule 1002, the so-called "best evidence rule." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir.2004). "Where the rule applies, the proponent must produce the original (or a duplicate, *see* FED.R.EVID. 1003) or explain its absence." *Id.* However, "[t]he rule's application turns on

'whether contents are sought to be provided.'" *Id.* (quoting FED.R.EVID. 1002, Advisory Committee's note). "Accordingly, the rule is inapplicable when a witness merely identifies a photograph or videotape 'as a correct representation of events which he saw or of a scene with which he is familiar.'" *Id.* (quoting FED.R.EVID. 1002, Advisory Committee's note). On the other hand, "the rule does apply when a witness seeks to testify about the contents of a ... photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe." *Id.* (citing FED.R.EVID. 1002, Advisory Committee's note). To the extent that Ms. Saenz and Aguilar testify that the photographs are correct representations of the pornographic graffiti that they saw on the walls of the portable toilet, Rule 1002 is inapplicable, and they do not need to produce either originals or duplicates of the photographs. Again, the plaintiffs have nevertheless stated their intention to offer the originals of the photographs, not any of the printouts.

 ASARCO also contends that Rule 901 bars the photographs, because they are not "sufficient to support a finding that the matter in question is what its proponent claims," because ASARCO contends that the photographs do not display the details that Aguilar and Ms. Saenz claim that they see in them. ASARCO's Rule 901 objection is misdirected. The photographs are properly authenticated, within the meaning of Rule 901, if the evidence is sufficient to support a finding that they are photographs of graffiti in the portable toilets taken at about the time that Aguilar and Ms. Saenz say that they saw such graffiti. *See Lucero v. Stewart,* 892 F.2d 52, 55 (9th Cir.1989) (holding that, to authenticate a photograph, the proponent must only identify the scene itself and its coordinates in time and place); *People of the Territory of Guam v. Ojeda,* 758 F.2d 403, 408 (9th Cir.1985)

("Under the Federal Rules [of Evidence 901(b)], the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question."); *United States v. Brannon,* 616 F.2d 413, 416 (9th Cir.1980) (holding that evidence that photographs accurately depicted events in a bank during a robbery was sufficient foundation to admit the photographs). Authentication does not turn on what the photographs purportedly display; that is for the jury to decide. *See United States v. McIver,* 186 F.3d 1119, 1129 (9th Cir.1999) (a police officer could authenticate photographs pursuant to Rule 901, where he set up the surveillance camera at the site in question, but the jurors were instructed that they would determine what was depicted in the photographs). Thus, whether or not the photographs show the details that Ms. Saenz and Aguilar claim to see in them is a matter for the jury to decide, for example, in light of examination and cross-examination about what can be seen in the photographs and whether they are of sufficient quality to show claimed details. For the same reasons, the photographs are not more prejudicial than probative, because they purportedly do not show the details that Ms. Saenz and Aguilar have identified in them. *See* FED.R.EVID. 403. Any potential prejudice from those circumstances can be adequately addressed by a limiting instruction reminding jurors that it is for them to determine what the photographs show. *See, e.g., Cherer,* 513 F.3d at 1159 (where the court reduces the risk of unfair prejudice by giving a limiting instruction, the risk of prejudice is less likely to substantially outweigh the probative value of the evidence); *Hollis,* 490 F.3d at 1153 (same).

Therefore, ASARCO's Motion In Limine Regarding Photographs Allegedly Taken By Sylvia Saenz (docket no. 285) will be denied.

#### 4. The motion to exclude they agency's "reasonable cause" determination

The last motion before the court is ASARCO's Motion In Limine Regarding The State Of Arizona's Reasonable Cause Determination (docket no. 286). The plaintiffs contend that this motion is simply unnecessary, because they already declared that they would not use the "reasonable cause" determination. Although this motion appears, at first blush, not to be opposed, the parties' arguments suggest that they still have some dispute about the admissibility of this evidence.

##### a. The evidence at issue

ASARCO seeks to bar the plaintiffs from introducing any evidence and/or making any argument or comment at trial concerning ACRD's "reasonable cause" determination pertaining to Aguilar's administrative charge of discrimination. According to ACRD, its investigation of Aguilar's charge led, among others, to the following conclusions: that Aguilar's claim of sex discrimination is "factually supported"; that Esquivel's testimony "supports" Aguilar's claims; that ASARCO failed to take necessary action in response to *Esquivel's* report of an offensive work environment; that ASARCO knew or should have reasonably known of the harassment of Aguilar; that there is reasonable cause to believe that an unlawful employment practice has occurred; that ASARCO failed to prevent the hostile work environment to which Aguilar was subjected; and that there was a causal connection between Aguilar's protected activity of complaining about harassment and subsequent harm that she suffered.

##### b. Arguments of the parties

ASARCO argues that the ACRD "reasonable cause" determination should be excluded, because it contains numerous conclusions concerning ASARCO's liability under the Arizona Civil Rights Act. AS-ARCO contends that some of the conclusions are unsupported by the evidence and, indeed, absurd. ASARCO contends that the "reasonable cause" determination is not only conclusory, but lacks probative value. ASARCO argues that the "reasonable cause" determination is bereft of any objective analysis of the evidence; relies almost exclusively upon the testimony of Aguilar and statements made by Esquivel which were surreptitiously obtained by the ACRD under the guise of investigating Esquivel's discrimination charge; the determination summarily dismisses any explanation that ASARCO has offered for its actions with respect to Aguilar; and the ACRD is a party to this lawsuit. ASAR-CO argues that the court should not admit the results of a one-sided, biased, and flawed investigation. At oral arguments on the pending motions in limine, it became apparent that ASARCO rejects the plaintiffs' undertaking not to try to admit the "reasonable cause" determination, because ASARCO believed that undertaking to be improperly tied to or conditioned on other stipulations.

In response to ASARCO's motion, the plaintiffs represent that they have agreed that they would not seek to have the ACRD's "reasonable cause" finding on Aguilar's charge admitted at trial, except to the extent necessary to oppose any allegation by ASARCO that Aguilar had failed to exhaust her administrative remedies. They point out that ASARCO has not offered to stipulate that Aguilar satisfied the ACRA and Title VII administrative exhaustion requirements. They contend that, in the absence of such a stipulation by ASARCO, the present motion should be denied, upon the understanding that the plaintiffs may seek to have the "reasonable cause" determination admitted solely for the purpose of opposing any claim by AS-ARCO that Aguilar failed to exhaust her administrative remedies.

### c. Analysis

The parties will not be allowed to argue before the jury whether or not Aguilar exhausted her administrative remedies, because that is a question for the court. Thus, the only question concerning this evidence at the jury trial is whether or not the ACRD's "reasonable cause" determination is otherwise admissible.

 Although a plaintiff may have a right to introduce an EEOC "probable cause" determination in a Title VII lawsuit, not all EEOC determinations fall within that rule. *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1161 (9th Cir.2010). For example, a "letter of violation" is a substantially different document than a "probable cause" determination, because it represents the EEOC's conclusion that a violation has occurred and, thus, poses a much greater risk of unfair prejudice that jurors might find it difficult to evaluate the evidence independently. *Id.* The district court must exercise its discretion in deciding whether or not to admit such a document. *Id.*; *Amantea–Cabrera v. Potter*, 279 F.3d 746, 749 (9th Cir.2002) (concluding that exclusion of an EEOC "decision and order" under Rules 402 and 403 was not an abuse of discretion, because it did not merely conclude that there was probable cause that a Title VII violation had occurred, but concluded that a Title VII violation had occurred); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283–84 (9th Cir.2000) (concluding that, although an EEOC "reasonable cause" determination would be admissible, such determinations varied greatly in quality, and when they contain only "bare conclusions," they have little probative value, and the "reasonable cause" determination did not generate a genuine issue of material fact on the plaintiff's age discrimination claim).

Here, the ACRD itself is a party, so that its "reasonable cause" determination simply vouches for the ACRD's litigation position, which both reduces its probative value and increases is potential for prejudice. *Id.* The "reasonable cause" determination in this case also goes beyond a determination of probability that Aguilar's rights were violated to reach a conclusion that violations have occurred, posing a still greater risk of unfair prejudice, as jurors might find it difficult to evaluate the evidence independently. *Id.* Under these circumstances, the ACRD's "reasonable cause" determination will be excluded pursuant to Rule 403 as substantially more unfairly prejudicial than probative.

Thus, ASARCO's Motion In Limine Regarding The State Of Arizona's Reasonable Cause Determination (docket no. 286) will be granted.

### III. CONCLUSION

Upon the foregoing,

1. Aguilar's Motion In Limine To Exclude Defendant's Expert Witness, Steven E. Pitt, D.O. (docket no. 280) is **granted** as to Dr. Pitt's report, but **denied** as to challenges to Dr. Pitt's testimony at trial, with these exceptions:

(a) ASARCO must demonstrate, out of the hearing of the jury, that Dr. Pitt's conclusion that "Mrs. Aguilar's pre-existing personality construct has contributed to her claimed emotional distress" satisfies the requirements of Rule 702; and

(b) Dr. Pitt may permissibly testify that Aguilar suffered and continues to suffer emotional distress that was causally related to the termination of her prior employment, but may not testify to the circumstances of the termination of her prior employment, her allegations of discrimination in her prior employment, or the charges of poor performance leveled against her by her prior employer, as that evidence is excluded pursuant to Rules 403 and 404.

2. ASARCO's Motion In Limine Regarding Allegations Of Discrimination Or Harassment Against ASARCO By Julio Esquivel (docket no. 281) is **denied** as to circumscribed evidence that Esquivel also saw and complained to management about pornographic graffiti in a restroom, which will be accompanied by an appropriate limiting instruction concerning the relevance of the evidence to punitive damages, but is otherwise **granted** as to the full range of evidence related to Esquivel's complaints of discrimination.

3. ASARCO's Motion In Limine Regarding Allegations Of Sexual Harassment/Discrimination By Wayne Johnson (docket no. 283) is **denied.**

4. ASARCO's Motion In Limine Regarding Photographs Allegedly Taken By Sylvia Saenz (docket no. 285) is **denied.**

5. ASARCO's Motion In Limine Regarding The State Of Arizona's Reasonable Cause Determination (docket no. 286) is **granted.**

6. Plaintiff Aguilar's Motion In Limine (docket no. 287) is **granted,** and the following evidence is excluded:

 (a) evidence of the Arizona DES determination;

 (b) and references to the dismissed claim of intentional infliction of emotional distress; and

 (c) evidence of Aguilar's prior employment, including job performance.

FINALLY, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED.**